John R. NATIONS

v.

W. W. MORRIS and American Motorists Insurance Company.

Civ. A. No. 69–1152.

United States District Court,
E. D. Louisiana,
New Orleans Division.

Aug. 5, 1971.

Darryl J. Tschirn, New Orleans, La., for plaintiff.

Gordon F. Wilson, Jr., Hammett, Leake & Hammett, New Orleans, La., for defendants.

HEEBE, District Judge:

This cause came on for hearing on a previous day on the motion of defendants, W. W. Morris and American Motorists Insurance Company, to dismiss for failure to state a claim and alternatively for summary judgment. The Court, having studied the legal memoranda, depositions and affidavits, is now fully advised in the premises and ready to rule.

The undisputed facts show that the plaintiff was injured on an offshore fixed oil platform, which platform is located in the Gulf of Mexico, 40 miles from the

Southwest Pass of the Mississippi River. Defendant W. W. Morris is an employee of Coral Drilling Company and a coworker of plaintiff who, at the time of the accident, was also employed by Coral Drilling Company. Defendant American Motorists Insurance Company is the liability insurer of Coral Drilling.

The plaintiff has brought this suit to recover for his injuries, alleging negligence under the general maritime law and Rule 9(h) F.R.Civ.P. and Article 2315 of the Louisiana Civil Code.

■ Because this alleged tort occurred on a stationary fixed platform, any cause of action is subject to the provisions of the Outer Continental Shelf Lands Act, 43 U.S.C. §§ 1301, 1331 and 1333. Under 43 U.S.C. § 1333(c), any disability of an employee resulting from any injury occurring on a fixed stationary platform located on the Outer Continental Shelf is compensable under the provisions of the Longshoremen's and Harbor Workers' Compensation Act (hereafter LHWCA).

■ The LHWCA provides that it is the employer's sole liability for injuries received by his employees. Consequently, an employer is not subject to a lawsuit in tort by an injured employee, injured by a coworker. The Act provides:

"(i) The right to compensation or benefits under this chapter shall be the exclusive remedy to an employee when he is injured, or to his eligible survivors or legal representatives if he is killed, by the negligence or wrong of any other person or persons in the same employ: Provided, that this provision shall not affect the liability of a person other than an officer or employee of the employer." 33 U.S.C. § 933(i).

Thus, the plaintiff cannot sue W. W. Morris, his coworker.

The next issue for determination is whether the grant of immunity to fellow employees from suit under the Longshoremen's and Harbor Workers' Compensation Act precludes a suit against the fellow employee's liability insurer, American Motorists Insurance Company, under the Louisiana Direct Action Statute.

In Hughes v. Chitty, 415 F.2d 1150 (5th Cir. 1969), Judge Wisdom specifically declined to reach the question because neither of the policies granted coverage.[1] In the case at bar, there are also two insurance policies issued by defendant American Motorists: (1) Personal Injury Liability Policy and (2) Comprehensive Automobile and General Liability Policy.

This comprehensive policy contains two express exclusions which make it inapplicable; the policy excludes payment for bodily injury arising out of and in the course of employment by the insured and for liability under any compensation statute.[2]

The second policy—Personal Injury Liability Policy—insures Coral Drilling employees from third-party tortfeasor actions by fellow employees, permitted by the Louisiana Workmen's Compensation Statute. Coverage extends

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of personal injury * * * sustained by any employee * * * arising out of and in the course of his employment * * *."

The policy defines the insured as "managing employees" which are defined as " * * * any employee having authority to act for and on behalf of the Named

---

1. *See also*, Shields v. American Motorists Ins. Co., 267 F.2d 49 (5th Cir. 1959).

2. Exclusions—The policy does not apply: "(a) to bodily injury of any employee of the insured arising out of and in the course of employment by the insured, or to occupational disease; but this exclusion does not apply to liability assumed by the insured under any contract," and "(b) under Coverage A, to any obligation for which the Insured or any carrier as his insurer may be held liable under any Workmen's Compensation, Unemployment Compensation, or Disability Benefits Law, or under any similar law."

Insured in the supervision and direction of the Named Insured's operations." Mr. Morris is thus insured by this policy.

This policy was apparently issued to insured employees of Coral Drilling, as was Mr. Nations, for liability which might arise out of an injury caused by another worker of Coral Drilling, as was Mr. Morris. This second policy does not contain any exclusion for liabilities compensable by workmen's compensation and all other liabilities to employees arising out of and in the course of their employment.

The defendant claims coverage in this second policy is limited to "sums which the insured shall become legally obligated to pay as damages." Defendant claims that this policy gives coverage for suits arising out of Louisiana Workmen's Compensation suits, but not for the federal LHWCA. The insurer argues that he is only liable if the insured is liable, and that since the insured's exclusive liability under 33 U.S.C. § 905 is payment of compensation, both the insured and the insurer are insulated from a suit filed by one worker against another coworker, 33 U.S.C. § 933(i).

In spite of the language of the Act concerning the employer's exclusive liability (which is given in return for guaranteed payment to the employees), the employer's liability may be substantially more than payments under the Act or substantially less. Illustrative of the former case is Waldron v. Moore McCormack Lines, 386 U.S. 724, 87 S.Ct. 1410, 18 L.Ed.2d 482 (1967), which held the stevedore employer liable to the shipowner on the theory of warranty of workmanlike performance for the total money recovery of its employee (a *Sieracki*-type seaman) against the shipowner.[3] Illustrative of the latter situation are sections (b), (c), (d) and (e) of 33 U. S.C. § 933 which allow the employer to recover from a third-party tortfeasor who caused the injury the entire amount

due the employee, with the consequence that the employer pays his employee nothing at all. This latter event takes place even when the employer is a joint tortfeasor with the third party because under 33 U.S.C. § 905, the employer cannot be made a third-party defendant on any tort theory. Ocean Drilling and Exploration Co. v. Berry Brothers Oilfield Service, 377 F.2d 511, 514–515 (5th Cir. 1967), cert. den. 399 U.S. 849, 88 S.Ct. 102, 19 L.Ed.2d 118.

Whether American Motorists can share in the immunity granted to coworkers by reason of the exclusive liability provisions of the LHWCA depends on whether the immunity of the insured is a personal defense of the insured. Because of the Louisiana Direct Action Statute, L.R.S.–R.S. 22:655, the insured and the insurer become codebtors *in solido*. Louisiana Civil Code Article 2098 sets forth the defenses available to debtors *in solido*:

"Art. 2098. A codebtor *in solido*, being sued by the creditor, may plead all the exceptions resulting from the nature of the obligation, and all such as are personal to himself, as well as such as are common to all the codebtors.

"He cannot plead such exceptions as are merely personal to some of the other codebtors."

Thus, the insurer can assert (1) a defense personal to itself (as coverage in the comprehensive policy); (2) a defense common to all the codebtors; and (3) a defense resulting from the nature of the obligation (as contributory negligence). The insurer cannot assert personal defenses of the insured. Those defenses traditionally considered personal to the insured are infancy, coverture, charitable immunity, governmental immunity, lunacy and bankruptcy. (*Cf.*, footnote 9, Alcoa Steamship Co. v. Chas. Ferran & Co., 443 F.2d 250 (5th Cir. 1971).

---

3. *See also*, Jackson v. Lykes Bros. Steamship Co., Inc., 386 U.S. 731, 87 S.Ct. 1419, 18 L.Ed.2d 488 (1967), *and* Reed v. The Yaka, 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448 (1963).

In the area of federal maritime law, the shipowner's limitation of liability has been held to be a personal defense, Olympic Towing Corp. v. Nebel Towing Co., 419 F.2d 230 (5th Cir. 1969), and the ship repairers "Red Letter Clause" has been held to be not a personal defense, but one arising from the nature of the obligation, Alcoa S. S. Co. v. Chas. Ferran & Co., *supra.*

Judge Ellis, reviewing the nature of personal defenses in Alcoa S. S. Co. v. Chas. Ferran & Co., 251 F.Supp. 823 (E.D.La.1966), at 831, found a common denominator among all personal defenses:

> " * * * each person possessing a 'personal' defense obtained that defense because the law granted it to all members of his class as a matter of public policy. The personal defense attaches to the status. Hence parents, children, husbands, wives, governmental units, charitable organizations, bankrupts, lunatics, interdicts, vessel owners, and the like possess a defense denied their respective insurers."

The provision in Section (i) of 33 U. S.C. § 933 which immunizes fellow employees from suit was added in 1959. In the legislative history, Senate Report No. 428, it would seem that Congress intended to create something more than a personal defense—rather an unconditioned prohibition of all suits based on the alleged negligence of a coworker.

> "The other major provision of the bill relates to the immunization of fellow employees against damage suits. The rationale of this change in the law is that when an employee goes to work in a hazardous industry he encounters two risks. First, the risks inherent in the hazardous work and second, the risk that he might negligently hurt someone else and thereby incur a large common-law damage liability. While it is true that this provision limits an employee's rights, it would at the same time expand them by immunizing him against suits where he negligently injures a fellow worker. It simply means that rights and liabilities arising within the 'employee family' will be settled within the framework of the Longshoremen's and Harbor Workers' Compensation Act."

However, in Cudahy Packing Co. v. Parramore, 263 U.S. 418, 44 S.Ct. 153, 68 L.Ed. 366 (1923), Justice Sutherland, in considering the constitutionality and application of Utah's Workmen's Compensation Act, wrote:

> "Workmen's Compensation legislation rests upon the idea of status, not upon that of implied contract; that is, upon the conception that the injured workman is entitled to compensation for an injury sustained in the service of an industry to whose operations he contributes his work as the owner contributes his capital * * *. The liability is based, not upon any act or omission of the employer, but upon the existence of the relationship which the employee bears to the employment because of and in the course of which he has been injured." At 423, 44 S.Ct. at 154.

But the question of status should not be viewed from an isolated point of view without considering the nature of the obligation (as was done in Alcoa Steamship Co. v. Chas. Ferran & Co., 443 F.2d 250 (5th Cir. 1971). In the absence of 33 U.S.C. § 933(i), every worker would be responsible to his coworker for injuries the worker negligently caused. Thus, every worker has an obligation to act reasonably, not to negligently cause injury, and to repair his tortious conduct.

The question becomes whether the 1959 amendment to LHWCA made a substantive alteration in the legal obligations one worker owed the other or whether the obligation remained and the remedies were altered. Other than Hughes v. Chitty, 283 F.Supp. 734 (E.D. La.1968), there are no cases construing the 1959 amendment. However, other

cases have ruled on the constitutionality of the Longshoremen's Act (and other compensation acts) as it relates to the deprivation of the injured party's common law right to sue the tortfeasor. Keller v. Dravo Corp. et al., 441 F.2d 1239 (5th Cir. 1971) held that 33 U.S.C. § 933(i) was constitutional and that the worker's " * * * right to sue his employer, its officers and his fellow-employees had not accrued and become vested before it was abolished by the limitation of § 933(i)." The Court there relied on the reasoning as expressed in Mondou v. New York, New Haven & Hartford Railroad Co., 223 U.S. 1, 32 S. Ct. 169, 56 L.Ed. 327 (1912), which case upheld the constitutionality of the Employers' Liability Act of 1908:

> "A person has no property, no vested interest, in any rule of the common law. That is only one of the forms of municipal law, and is no more sacred than any other. Rights of property which have been created by the common law cannot be taken away without due process; but the law itself, as a rule of conduct, may be changed at the will * * * of the legislature, unless prevented by constitutional limitations."

Indicative that the substantive and not merely procedural rights were altered between employers and employees in workmen compensation statutes is the case of Bradford Electric Light Co. v. Clapper, 286 U.S. 145, 52 S.Ct. 571, 76 L.Ed. 1026 (1932). There, the widow of a fatally injured employee filed a tort suit in a New Hampshire court against her husband's Vermont employer. The facts revealed that the employer-employee relationship had been entered into in Vermont, where the employee normally worked, but that the employee was fatally injured in New Hampshire. In New Hampshire an injured employee could elect to pursue either a tort or compensation remedy, whereas in Vermont the employer's sole liability was for compensation. In holding that the employer's defense (viz., statutory limitation of liability to compensation under the Vermont statute) to be a substantive defense which the New Hampshire court must recognize, the Court wrote:

> "A State may, on occasion, decline to enforce a foreign cause of action. In so doing, it merely denies a remedy, leaving unimpaired the plaintiff's substantive right, so that he is free to enforce it elsewhere. But to refuse to give effect to a substantive defense under the applicable law of another state, as under the circumstances here presented, subjects the defendant to irremediable liability. This may not be done." At 160, 52 S.Ct. at 576. (emphasis added)

It is true the Bradford case did not consider the Federal Longshoremen Act which was not enacted until 1927. But " * * * the (Longshoremen's) statute was designed to accomplish the same general purpose as Workmen's Compensation Laws of the states," Crowell v. Benson, 285 U.S. 22, 40, 52 S.Ct. 285, 288, 76 L.Ed. 598 (1932). See also, Parker v. Motor Boat Sales, 314 U.S. 244, 62 S.Ct. 221, 86 L.Ed. 184 (1941) for a discussion of the purposes of the Act, especially the report of the Senate Committee on the Judiciary, at 249.

The Longshoremen Act, like other " * * * compensation laws are practically always thought of as substitutes for, not supplements to, common-law tort actions." United States v. Demko, 385 U.S. 149, 151, 87 S.Ct. 382, 383, 17 L.Ed. 2d 258 (1966).

In resolving the question whether the immunity of a coworker from common-law suit should be extended to the insurer, the theory of the compensation legislation should be considered. The entire purpose was to (1) ensure that the injured worker would receive speedy and sure monetary compensation without resort to finding liability based on fault and (2) limit the employer's liability only to compensation and make him immune from common-law suits. The employer

discharges this liability by obtaining insurance.

In any industry in Louisiana, especially off-shore oil, any insurance coverage for managing employees is provided and paid by the *employers*. The reason this coverage is obtained is because under the Louisiana compensation statute, as interpreted, fellow employees are third parties subject to suit. Adams v. Fidelity and Casualty Co. of New York, 107 So.2d 496 (La.App.1958). According to Malone, Louisiana Workmen's Compensation, § 366, fellow employees are usually considered to be third persons subject to suit except in those jurisdictions where the Compensation Act expressly confers the employer's immunity upon all co-employees. One such jurisdiction is New York, whose compensation statute was the model for the Longshoremen Act. This provision is 33 U.S.C. § 933(i) of the Longshoremen Act.

It becomes obvious that in considering the LHWCA, the employer's limitation of liability, one half of the legislative bargain, would be an empty phrase if the employer would be required to maintain insurance for his "managing employees" to provide unlimited recovery in common-law damage suits brought by other employees. The employer's liability is limited by the statute to compensation payments. The employer operating under the LHWCA has no duty either by statute, common law or good business reasons to provide and maintain liability insurance for the tortious acts committed by one of its employees against another employee, even though this same employer, operating under the Louisiana Compensation Act, would obtain insurance.

■ To hold otherwise would be to strain the intent and purpose of this federal statute. The Court holds the immunity of the coworker from a common-law suit instituted by another coworker to be a substantive, nonpersonal defense which goes to the nature of the obligation. This immunity defense is one that can be pleaded by the insurer.

Accordingly, it is the order of the Court that the motions of defendants, W. W. Morris and American Motorists Insurance Company, for summary judgment be, and the same are hereby, granted.