Ann **WALTERS**, Plaintiff,

v.

Laura **WHITE** and James Davey, Defendants.

Civ. A. No. 87–990–A.

United States District Court, E.D. Virginia, Alexandria Division.

Feb. 10, 1988.

Paula P. Newett, Asst. U.S. Atty., Alexandria, Va., for plaintiff.

Bernard J. Dimuro, Charles M. Rust-Tierney, Hirschkop, Dimuro & Mook, Alexandria, Va., for defendants.

## MEMORANDUM OPINION

ELLIS, District Judge.

### INTRODUCTION

This removed matter is before the Court on defendants' motion for summary judg-

ment pursuant to Rule 56 of the Federal Rules of Civil Procedure. As there are no material facts in dispute, the matter is ripe for summary disposition.

This motion presents two issues. The first issue is whether defendants, Laura White and James Davey, who are federal employees, were acting within the scope of their employment when they were involved in an automobile accident with plaintiff, Ann Walters. If so, then plaintiff's sole remedy is against the United States and defendants escape personal liability pursuant to the Federal Drivers Act, 28 U.S.C. § 2679 (1982). If defendants were not acting within the scope of their employment at the time of the accident, then plaintiff's remedy, if any, is against defendants in their individual capacities. The second issue is whether plaintiff's claim is barred by the "fellow servant doctrine," embodied in the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. § 933(i), which states that worker's compensation benefits are the exclusive remedy when an employee is injured by the negligence of any other person "in the same employ." The Court holds (i) that under Texas law, defendants were not acting within the scope of their employment, and (ii) that plaintiff's claim is not barred by the fellow servant doctrine. Accordingly, defendants' motion for summary judgment is denied. As a consequence of this ruling, the jurisdictional basis for removal disappears and the matter is remanded to state court.

## FACTS

The essential facts are uncontroverted. All parties are employed by the Department of Defense (DOD) Wage Fixing Authority, a non-appropriated fund instrumentality (NAFI).[1] In April 1985, they traveled from Alexandria, Virginia, to El Paso, Texas, on temporary duty status (TDY) for the purpose of conducting training and wage surveys for NAFI employees in Texas and New Mexico. The TDY orders of the plaintiff and defendants provided for payment of their expenses on a per diem basis. In addition, arrangements for air travel, lodging, and car rental were made in advance by NAFI. The NAFI employees were authorized to use the rental cars for travel to the training and survey sites and for travel in and around the TDY station. No restrictions or limitations concerning travel in the rental cars while in or around the TDY station were imposed on any NAFI employee.

While in El Paso, defendant Davey drove to a local restaurant for dinner in a vehicle rented by the plaintiff, Walters. Walters was a passenger in this vehicle. Defendant White followed Davey and Walters in another rental car. An accident occurred when White's vehicle struck the rear of Davey's vehicle, causing injury to Walters.

Thereafter, in May 1985, plaintiff filed a claim for workmen's compensation with the Army Central Insurance Fund for injuries suffered in the accident. Plaintiff was awarded compensation. In April 1987, plaintiff filed this action against defendants in their individual capacities in the Circuit Court for the City of Alexandria, Virginia, for injuries allegedly sustained in the accident. Defendants removed the case to federal court pursuant to 28 U.S.C. § 1442(a)(1),[2] asserting that they were acting under color of their federal offices.

---

**1.** *See* The Non-appropriated Fund Federal Wage System Act (Prevailing Rate Systems Act), Pub.L. No. 92–392, 86 Stat. 572 (1972). This law provides that rates of pay for certain federal employees will be set on the basis of local wage surveys of rates being paid for comparable positions in the private sector. NAFI establishes the procedures to be followed in conducting such wage surveys.

**2.** This statute provides, in part, that:
   (a) A civil action ... commenced in a State court against any of the following persons

may be removed by them to the district court of the United States ...:
   (1) Any officer of the United States or any agency thereof, or person acting under him, for *any act under color of such office....* 28 U.S.C. § 1442(a)(1) (emphasis added). Defendants assert that they were acting under "color of office" at the time of the accident, thus removal under § 1442 is appropriate. *See Willingham v. Morgan,* 395 U.S. 402, 405, 89 S.Ct. 1813, 1815, 23 L.Ed.2d 396 (1969) (the federal office removal statute provides a "federal forum for cases where federal officials must raise defenses arising from their official duties").

## ANALYSIS

### 1. *Federal Drivers Act*

Defendants assert that plaintiff's claim is barred by the Federal Drivers Act, 28 U.S.C. § 2679, which provides, in part, that a suit against the United States is the exclusive remedy for personal injury "resulting from the operation by any employee of the Government of any motor vehicle while acting within the scope of his office or employment." 28 U.S.C. § 2679(b). Defendants argue that they were acting within the scope of their employment when the accident occurred with the result that plaintiff's sole remedy is a suit against the United States. The issue presented, therefore, is whether defendants were acting within the scope of their employment at the time of the accident.

In an action under the Federal Drivers Act, the issue of whether an employee was acting within the scope of his employment is to be determined by the principles of respondeat superior of the jurisdiction where the tort occurred. *See Williams v. United States,* 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761 (1955); *see also Henderson v. United States,* 429 F.2d 588 (10th Cir. 1970). In addition, the "scope of employment" issue is a question of law for the trial court to decide. *Levin v. Taylor,* 464 F.2d 770, 771 (D.C.Cir.1972). Since the accident in this case occurred in Texas, the Texas doctrine of respondeat superior is controlling.

Under Texas law, the test for respondeat superior "is whether at the time and occasion in question, the master has the right and power to direct and control the servant in the performance of the causal act or omission at the very instance of its occurrence." *London v. Texas Power and Light Co.,* 620 S.W.2d 718, 720 (Tex.Civ. App.1981) (citing *Parmlee v. Texas & New Orleans R.R. Co.,* 381 S.W.2d 90 (Tex.Civ. App.1964)); *see also Pilgrim v. Fortune Drilling Co.,* 653 F.2d 982, 986 (5th Cir. 1981). Stated another way, it is necessary that the act be done "within the general authority of the master in furtherance of

the master's business, and for the accomplishment of the object for which the servant is employed." *London,* 620 S.W.2d at 720 (citing *Thompson v. B.B. Saxon Co.,* 472 S.W.2d 325 (Tex.Civ.App.1971)); *see also North River Insurance Co. v. Hubbard,* 391 F.2d 863, 865 (5th Cir.1968).

■ A review of the pertinent Texas authorities leads this Court to hold that defendants here were not acting within the scope of their employment at the time of the accident. The case closest in point is *Shelton v. Standard Insurance Co.,* 389 S.W.2d 290 (Tex.1965), where plaintiff sought workmen's compensation benefits for injuries sustained while crossing the street to eat dinner in a cafe. That plaintiff was employed to drive trucks containing his employer's equipment round trip from Abilene, Texas, to Wichita, Kansas. The total time required for each trip was thirty-three hours, and it was necessary for the employee to sleep and eat en route. While en route from Abilene to Wichita, plaintiff's truck developed battery trouble and plaintiff was forced to stop in Dallas overnight. Plaintiff checked into a local motel and started across the street to a cafe for dinner. While crossing the street, plaintiff was struck by an automobile.

The issue before the *Shelton* court was whether plaintiff was acting within the scope of his employment for purposes of receiving workmen's compensation benefits. Although the court held that the plaintiff was within the scope of his employment for purposes of receiving workmen's compensation, it stated that "[i]t could not seriously be contended that petitioner, while crossing the street, was in the scope of his employment for establishing liability under the doctrine of respondeat superior." *Id.* at 293. This dicta in *Shelton* suggests that Walters, Davey, and White, although acting within the scope of their employment for purposes of workmen's compensation,[3] were not acting within the scope of their employment for establishing liability under respondeat superior.

---

**3.** In May 1985, Walters filed for and received workmen's compensation benefits from the

Army Central Insurance Fund for injuries received in the accident.

Thus, under Texas law, an employee may be within the scope of his employment for purposes of receiving workmen's compensation, but not for purposes of respondeat superior. This is so because the Texas Workmen's Compensation Act "must be given a liberal construction to carry out its evident purpose" of insuring an award of compensation to an injured employee. *Id.* No similar policy underlies the doctrine of respondeat superior.

*Shelton* is consistent with the law in other jurisdictions. For example, in *Gupton v. United States*, 799 F.2d 941 (4th Cir.1986) the Fourth Circuit affirmed the trial court's holding that a serviceman was not within the scope of his employment under the Federal Drivers Act where the serviceman was involved in an automobile accident while moving to a new duty station. There, plaintiff cited numerous analogous North Carolina cases, holding the employer liable under North Carolina's Workman's Compensation Act. The Fourth Circuit, however, found these authorities to be unpersuasive:

> Workman's compensation law in North Carolina differs from the law of *respondeat superior.* There is an established policy of liberal construction in the Workman's Compensation Act to insure an award of compensation to the employee whenever the liability of the employer is in question. North Carolina Workman's Compensation Law imposes liability upon an employer if the employee was acting for the benefit of the employer to an appreciable extent when the accident occurred. *Hoffman v. Ryder Truck Lines, Inc.*, 306 N.C. 502, 293 S.E.2d 807 (1982). The element of control, which is central to *respondeat superior*, is unnecessary for liability under the North Carolina Workman's Compensation Act.

*Id.* at 943.

Like North Carolina law, Texas law requires that the master have some form of control over the acts of the servant for purposes of respondeat superior. *Compare London v. Texas Power and Light Co.*, 620 S.W.2d 718, 720 (Tex.Civ.App. 1981) (master must have control over acts of servant) *with Lindsey v. Leonard*, 235 N.C. 100, 68 S.E.2d 852 (1952) *and United States v. Eleazer*, 177 F.2d 914 (4th Cir. 1949) (in the absence of the right and power to command or direct the employee in the performance of the act or omission charged, liability cannot be imputed to the employer), *cert. denied*, 339 U.S. 903, 70 S.Ct. 517, 94 L.Ed. 1333 (1950). Here, the facts do not indicate any manner of control by the DOD over the defendants. No restrictions or limitations concerning travel in the rental cars while in or around the TDY station were imposed on defendants. No limits or restrictions were placed on defendants concerning where they could eat or the purposes for which they could use the rental cars. Defendants were not precluded from using the rental vehicle for any lawful and reasonable after-hours recreational use. Since the TDY station encompassed the area from El Paso, Texas, to Dona Ana, New Mexico, defendants had unrestricted use of the rental cars within this large geographic area. Presumably, defendants could have driven anywhere in their TDY area to eat dinner. Accordingly, in the absence of any control by DOD over the operation of the automobiles, defendants were not acting within the scope of their employment to establish liability under the doctrine of respondeat superior.

Moreover, it is of no consequence that defendants were not in El Paso by their own choice. Indeed, the court in *Shelton* recognized that the employee was not in Dallas by his own choice, but was required to be there to do his job. The *Shelton* court also recognized that the place and circumstances of his eating and sleeping were dictated by contingencies inherent in his work, and that "neither personal pleasure nor recreation played any part" in his choice of dining establishments. *Shelton,* 389 S.W.2d at 294. Yet the court stated, in dicta, that the employee was not within the scope of his employment for purposes of respondeat superior. Similarly, defendants here, although not in El Paso by their own choice, were not acting within the scope of their employment so as to be insulated from liability under the Federal Drivers Act. Indeed, the instant case is, if any-

thing, even clearer on this point as there is no claim or showing that personal pleasure and recreation played no part in the use of the rental cars to go to dinner.

Nor is it of any consequence that defendants here received a per diem allowance while in El Paso. In *London v. Texas Power & Light Co.*, 620 S.W.2d 718 (Tex. Civ.App.1981), the court held that, under Texas law of respondeat superior, an employee who received mileage compensation in lieu of per diem expenses was not, on that account, acting within the scope of his employment while traveling to a temporary work site. The *London* court based its holding on the fact that the employer exerted no control as to the manner of transportation chosen by the employee. 620 S.W.2d at 720. The same is true here; DOD exerted no control over the employees' use of the automobile or the place were the employees were to eat dinner. In the absence of such control, defendants were not acting within the scope of their employment under Texas law of respondeat superior. *See also Shelton*, 389 S.W.2d at 291 (employee paid per diem, yet not within scope of employment under respondeat superior when crossing street to eat dinner); *cf. American National Insurance Co. v. O'Neal*, 107 S.W.2d 927 (Tex.Civ.App.1937) (where employer exerts no control over means of travel, employee is not engaged in furtherance of master's business for purposes of respondeat superior).

## 2. *The Fellow Servant Doctrine*

Given that defendants cannot use the Federal Drivers Act as a shield from liability, the issue then becomes whether the "fellow servant doctrine," embodied in the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. § 933(i), bars plaintiff's claim.[4] This section provides, in part, that:

> The right to compensation or benefits under this chapter shall be the exclusive remedy to an employee when he is injured ... by the negligence ... of any other person or persons in the same employ....

If defendants were "in the same employ" as plaintiff at the time of the accident, then plaintiff's sole remedy is worker's compensation benefits.[5]

Although there exists no case directly in point, a review of authorities interpreting the fellow servant doctrine suggests that plaintiff and defendants here were not "persons in the same employ" at the time of the accident, therefore plaintiff's claim is not barred by the LHWCA. First, section 933(i) does not preclude an injured employee from seeking recovery against a third party not in the same employ. *See Hughes v. Chitty*, 283 F.Supp. 734 (E.D.La.), *aff'd*, 415 F.2d 1150 (5th Cir.1969). Second, a co-employee is considered to be in the same employ only where the co-employee's acts relate to or arise out of his employment at the time of the accident. *See Calder v. Crall*, 726 F.2d 598 (9th Cir.), *cert. denied*, 469 U.S. 857, 105 S.Ct. 185, 83 L.Ed.2d 118 (1984); *Nations v. Morris*, 331 F.Supp. 771 (E.D.La. 1971), *aff'd*, 483 F.2d 577 (5th Cir.), *cert. denied*, 414 U.S. 1071, 94 S.Ct. 584, 38

---

**4.** Defendants assert that this Court lacks jurisdiction to consider whether plaintiff's claim is barred by the fellow servant doctrine. *See Pan Am Corp. v. Superior Court of Delaware*, 366 U.S. 656, 81 S.Ct. 1303, 6 L.Ed.2d 584 (1961) "Apart from diversity jurisdiction, 'a right ... created by ... the laws of the United States must be an element, and an essential one, of the plaintiff's cause of action ... and the controversy must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal.'" *Id.* at 663, 81 S.Ct. at 1307 (quoting *Gully v. First National Bank*, 299 U.S. 109, 112–13, 57 S.Ct. 96, 97–98, 81 L.Ed. 70 (1936)). But defendants removed this action pursuant to the federal office removal statute, 28 U.S.C. § 1442(a)(1). The Supreme Court has broadly

construed the removal statute, whose purpose "was to provide a federal forum for cases where federal officials must raise defenses arising from their official duties." *Willingham v. Morgan*, 395 U.S. 402, 405, 89 S.Ct. 1813, 1815, 23 L.Ed.2d 396 (1969). Given the Supreme Court's broad construction of the removal statute, this Court holds that it has jurisdiction to consider defendants' fellow servant doctrine defense.

**5.** Title 5 U.S.C. § 8171 provides, in part, that worker's compensation benefits for all NAFI employees shall be paid pursuant to the LHWCA. For a case applying the LHWCA to a NAFI employee, see *Calder v. Crall*, 726 F.2d 598 (9th Cir.1984).

L.Ed.2d 477 (1973). Given that defendants were not acting within the scope of their employment for purposes of escaping liability under the Federal Drivers Act, it would be anomalous to hold that they were acting within the scope of their employment so as to escape liability under the LHWCA.[6] Defendants, therefore, were not in the same employ as plaintiff at the time of the accident, but rather were third parties. Accordingly, plaintiff's claim is not barred by the fellow servant doctrine.

 Because defendants were not within the scope of their employment at the time of the accident and therefore cannot escape liability under the Federal Drivers Act or the LHWCA, defendants' motion for summary judgment is denied. The final issue, then, is whether this Court has authority to continue hearing plaintiff's claim once defendants' basis for removal to federal court has been eliminated. Some authorities suggest that this Court *must* remand the case back to state court. In *McGowan v. Williams*, 623 F.2d 1239 (7th Cir.1980), where a tort suit was filed in state court and later removed under the provisions of the Federal Drivers Act, the court stated that "if ... the district court finds that the federal driver was not acting within the scope of his employment ... [t]he action must then be remanded to state court where it is to be recommenced against the federal driver in his individual capacity." *Id.* at 1242 (citing 28 U.S.C. § 2679(d)); *Van Houten v. Ralls*, 411 F.2d 940, 942 (9th Cir.), *cert. denied*, 396 U.S. 962, 90 S.Ct. 436, 24 L.Ed.2d 426 (1969)). Although defendants removed this action under 28 U.S.C. § 1442, the Court has found no authori-

ty which suggests that this case can remain in federal court. In any event, the Court may in its discretion order that the matter be remanded where, as here, the basis for federal jurisdiction is eliminated. *See* 14A C. Wright & A. Miller, Federal Practice and Procedure § 3739 (1985). Accordingly, this matter is remanded to state court.

An appropriate Order will enter.

---

6. Clearly, section 933(i) cannot be interpreted to provide blanket immunity to a tortfeasor who, by mere coincidence, is employed by the same entity as the victim. There must exist a nexus between the negligent employee's conduct and his status as a federal employee. In the absence of any nexus, the "fellow employee" is merely a third party, and the fellow servant doctrine is inapplicable. Yet defendants assert that the parties were within the scope of their employment at the time of the accident because plaintiff received worker's compensation benefits for her injuries. The issue, then, is whether actions falling within an employee's scope of employment should be construed broadly, as in work-

er's compensation cases, or narrowly, as in respondeat superior cases, in the context of a 933(i) defense. The Court adopts the narrow construction. Worker's compensation statutes are construed broadly on the basis of strong public policy considerations favoring an award of compensation *whenever* the liability of an employer is in question. *See Gupton v. United States*, 799 F.2d 941 (4th Cir.1986). These same public policy considerations do not exist in the context of a 933(i) defense. Accordingly, defendants were not acting within the scope of their employment at the time of the accident and cannot escape liability under either the Federal Drivers Act or the LHWCA.